## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **FIRST NATIONAL EQUIPMENT FINANCING,** | ) ) ) | **CASE NO. 8:10CV370** |
| **Plaintiff,** | ) ) ) | |
| **v.** | ) ) | **MEMORANDUM AND ORDER** |
| **CAMERON INSURANCE COMPANIES,** | ) ) ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Defendant's Amended Motion to Dismiss Plaintiffs' Complaint and Request for Oral Argument.  (Filing No. 11.)  For the reasons discussed below, the Motion will be denied.

### BACKGROUND

Plaintiff First National Equipment Financing ("FNE Financing") filed this action on October 4, 2010, invoking the Court's diversity jurisdiction and alleging a breach of contract by the Defendant Cameron Insurance Companies ("Cameron").  (Complaint, Filing No. 1.) FNE Financing claims that it was named as an additional insured under a general liability policy and, in support of its claims, it has attached to its Complaint certificates of liability insurance allegedly issued to it by Cameron.   On November 10, 2010, Cameron moved to dismiss the Complaint arguing that this Court lacks personal jurisdiction over Cameron, that venue in this district is improper, and that the Complaint fails to state a claim upon which relief can be granted.

In support of its Motion to Dismiss, Cameron asserts that it had no contacts with Nebraska other than emails and letters to FNE Financing, denying coverage under the insurance policy that is the subject of this litigation. Cameron also asserts that it did not

enter into an insurance contract with FNE Financing and that it has not, nor has any of its subsidiaries,[1] ever issued an insurance policy in Nebraska.  Cameron offers both affidavit and documentary evidence supporting these assertions.  (Filing No. 10.)

On December 6, 2010, this Court issued a Memorandum and Order permitting FNE Financing to conduct certain discovery limited to the jurisdictional issues.  (Filing No. 15.)  On January 19, 2011, FNE responded to the Motion to Dismiss, and submitted its own index of evidence.  (Filing Nos. 25, 26.)  Cameron submitted a reply brief and a second index of evidence on January 26, 2011 (Filing Nos. 27, 28), and the matter is now ripe for the Court's action.

## STANDARDS OF REVIEW

### *Rule 12(b)(2)*

To survive a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).  When jurisdiction has been challenged, "the plaintiff has the burden of proving facts supporting personal jurisdiction," *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (citing *Dever* 380 F.3d at 1072), but a plaintiff need only "establish[] a prima facie case" that personal jurisdiction exists. *Steinbuch*, 518 F.3d at 585 (citing *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir.

---

[1] Defendant states that its true name is Cameron Mutual Insurance Company and that its subsidiary, Cameron National Insurance Company, a non-party to this lawsuit, is authorized to sell insurance in Nebraska, but has never issued a policy to any person or entity in the state.

2006)).  The plaintiff's showing "must be tested, not by the pleading alone, but by affidavits and exhibits presented" in support of and in opposition to the motion to dismiss for lack of personal jurisdiction.  *Coen v. Coen*, 509 F.3d 900, 904-05 (8th Cir. 2007) (quoting *Dever* 380 F.3d at 1072).

In determining whether this Court has personal jurisdiction over a nonresident defendant, two issues are presented: (1) whether the requirements of the Nebraska long-arm statute are satisfied and (2) whether the exercise of jurisdiction over this Defendant will violate the Due Process Clause of the Fourteenth Amendment.  *Coen*, 509 F.3d at 905 (citing *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)).  Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536,[2] has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution.  *Wagner v. Unicord Corp.*, 526 N.W.2d 74, 77 (Neb. 1995).  Thus, the Court need only determine whether the assertion of jurisdiction in this case offends constitutional limits.

---

[2]Neb. Rev. Stat. § 25-536 provides:

A court may exercise personal jurisdiction over a person:
    (1) Who acts directly or by an agent, as to a cause of action arising from the person:
    (a) Transacting any business in this state;
    (b) Contracting to supply services or things in this state;
    (c) Causing tortious injury by an act or omission in this state;
    (d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
    (e) Having an interest in, using, or possessing real property in this state; or
    (f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or
    (2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

In order to exercise personal jurisdiction over a nonresident defendant, due process requires that such defendant have "minimum contacts" with the forum state such that maintenance of a suit against that defendant does not offend "'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The nonresident defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and it is essential that "'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Coen*, 509 F.3d at 905. "Purposeful availment" means that the defendant's contacts with the forum state must not be "random," "fortuitous," "attenuated," or the result of "unilateral activity of a third person or another party." *Burger King*, 471 U.S. at 475 (internal quotations and citations omitted). A defendant's minimum contacts with the forum state must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (citing *Clune v. Alimak AB*, 233 F.3d 538, 544 n.8 (8th Cir.2000)).

Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, such contacts must be analyzed in light of other factors to determine whether the exercise of personal jurisdiction over the

nonresident defendant comports with "fair play and substantial justice." *Burger King*, 471 U.S. at 476. The factors, as articulated by the Eighth Circuit Court of Appeals, are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Coen*, 509 F.3d at 905 (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994)). The fourth and fifth factors, however, are of secondary importance and not determinative. *Id.; see also Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). In applying these factors, the central inquiry is the "'relationship among the defendant, the forum, and the litigation.'" *Land-O-Nod*, 708 F.2d at 1340 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

### *Rule 12(b)(3)*

Fed. R. Civ. P. 12(b)(3) permits a party to raise the defense of "improper venue" by motion. When jurisdiction is based solely on diversity of citizenship, as in this case, proper venue may be found in:

 "(1) a judicial district where any defendant resides, if all defendants reside in the same State;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated; [or]

 (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."

28 U.S.C. § 1391(a).

**_Rule 12(b)(6)_**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Specifically, the complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim. *Id.* at 556.

When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

"Two working principles underlie . . . *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950 (citing *Twombly,* 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"After *Twombly*, we have said that a plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims, rather than the facts that are merely consistent with such a right.'" *Gregory*, 565 F.3d at 473 (internal omissions removed) (quoting *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007)).

"While a plaintiff need not set forth detailed factual allegations, or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Gregory,* 565 F.3d at 473 (quotations and citations omitted).

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

**FACTS**

Viewing the evidence in the light most favorable to FNE Financing, and resolving all factual conflicts in its favor, the following facts are accepted as true for purposes of the pending motion.  FNE Financing is a Nebraska corporation.  On December 21, 2001, it agreed to provide financing for equipment that Steve West Farms purchased for its farms in Arkansas, and Steve West Farms agreed to provide, maintain, and pay for certain liability insurance and to name FNE Financing as an additional insured.

The General Insurance Agency of Blytheville, Inc., in Blytheville, Arkansas, sent certain certificates of liability insurance to FNE Financing in 2006, 2007, and 2008, evidencing Steve West Farms' insurance coverage afforded through "Cameron Insurance Cos" from January 2, 2006, through January 2, 2008.  One such certificate, evidencing $1,000,000 in commercial general liability coverage from January 2, 2006, through January 2, 2007, stated that "FIRST NATIONAL EQUIPMENT FINANCING IS NAMED AS ADDITIONAL INSURED."  (Complaint, Filing No. 1, Ex. A.)

Cameron Mutual Insurance Company ("Cameron Mutual") and Cameron National Insurance Company ("Cameron National"), its wholly owned subsidiary, are both Missouri corporations.  The corporations share the same address, same board of directors, same employees, and same general counsel.  Cameron Mutual reinsures Cameron National. The term "Cameron Insurance Companies" is a trade name used by both Cameron Mutual and Cameron National, and was used on the relevant certificates of insurance and on all correspondence between Cameron and FNE Financing during times relevant to this action. Cameron National has held a certificate of authority to do business in Nebraska since

8

1984, authorizing it to sell insurance in Nebraska, and it has paid annual fees to the Nebraska Department of Insurance and has filed annual and quarterly reports with that Department, although Cameron National denies that it has exercised its authority to sell insurance policies in Nebraska.[3]

On or about May 12, 2009, FNE Financing was named as a defendant in a lawsuit filed in the Circuit Court of Mississippi County, Arkansas. The plaintiff in the case, Charles Ashley, sought compensation for personal injuries allegedly sustained by his son, Daniel Ashley, on or about October 30, 2007, while Daniel was disassembling irrigation equipment that was financed by FNE Financing on a farm owned by Steve West Planting Co., an affiliate of Steve West Farms. FNE Financing sought defense costs and indemnity from Cameron in connection with the litigation, but Cameron denied that FNE Financing was at any time an additional insured under the liability policies issued to Steve West or Steve West Farms. Cameron did, however, offer to defend FNE Financing in the litigation, using the same counsel provided to Steve West. FNE Financing objected, asserting that the interests of Steve West and FNE Financing were in conflict and that the parties could not share counsel. Communications from Cameron to FNE Financing and its agents in Nebraska, in connection with the dispute that led to this action, included several telephone calls, nineteen emails, and letters numbering fewer than ten. Ultimately, FNE Financial retained its own counsel, incurring $214,371.29 in attorney fees in connection with the successful defense of the Ashley litigation.

---

[3]   Cameron Mutual insures several individuals or entities in Nebraska, but it contends that those were not policies issued in the state of Nebraska. Deposition of Brad Fowler, Cameron Mutual Claims Department Manager (Filing No. 26-11, 24:1 - 27:4).

FNE Financing brought this action on October 4, 2010, invoking the Court's diversity jurisdiction and seeking reimbursement for the costs of its defense in the Ashley litigation, and other relief.

## DISCUSSION

### *Personal Jurisdiction*

Viewing the evidence in the light most favorable to FNE Financing, and resolving all factual conflicts in its favor, there is sufficient evidence before the Court to support a prima facie showing of personal jurisdiction over Cameron in this forum.

It may be inferred from the Certificate of Liability Insurance (Exhibit A to Complaint, Filing No. 1) that The General Insurance Agency of Blytheville, Inc., was an agent of Cameron and represented to FNE Financing that Cameron had issued a commercial general liability policy, naming FNE Financing of Nebraska as an additional insured.  The copy of the certificate attached to the Complaint as Exhibit A indicates that it was faxed to FNE Financial by "The General Ins. Agency" on March 10, 2008, at 12:22 p.m., directed to FNE Financial's office in Omaha, Nebraska.  That certificate and others sent to FNE Financial by The General Insurance Agency named the "INSURERS AFFORDING COVERAGE" as "CAMERON INSURANCE COS."  No distinction was made between "Cameron Insurance Companies" and "Cameron Mutual" or "Cameron National" in the certificates of liability insurance, nor in Cameron's letterhead, used for correspondence with FNE Financial.

Since 1984, Cameron National has been registered with the Nebraska Department of Insurance to do business in the state of Nebraska; it has made annual payments to that

Department; and it has submitted annual and quarterly reports to that Department. Although Cameron asserts that Cameron National has not sold any insurance policies in Nebraska, it acknowledges that Cameron Mutual does insure a few entities or individuals in Nebraska.

As FNE Financing notes, Neb. Rev. Stat. § 44-135 (Reissue 2004) provides that a foreign insurance company that procures a certificate of authority to do business in Nebraska is subject to personal jurisdiction in Nebraska in "any action arising out of its activities in the state."  Neb. Rev. Stat. § 44-2011 (Reissue 2004) provides that, in any action instituted by an insured, personal jurisdiction over a foreign insurer may be had in Nebraska if the insurer engaged in the following "systematic or continuous acts in this state, effected by mail or otherwise":

> (1) The issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein, (2) the solicitation of applications for such contracts, (3) the collection of premiums, membership fees, assessments, or other considerations for such contracts, (4) the investigation or payment of claims, or (5) any other transaction of business[.]

FNE Financing asserts that, at a minimum, Cameron's negotiations with FNE Financing and its offer to provide FNE Financing with a defense in the Ashley litigation were "activities" or "the investigation of a claim" occurring in Nebraska; and that by providing insurance coverage for other Nebraska entities or individuals, Cameron Mutual has collected premiums, investigated or paid claims, or engaged in the "other transaction of business" in Nebraska.

Considering (1) the nature and quality of Cameron's contacts with the state of Nebraska; (2) the quantity of those contacts; (3) the relation of the cause of action to the

11

contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties[4]; this Court concludes that FNE Financing has demonstrated that this Court has both general and specific personal jurisdiction over Cameron

Without determining at this early juncture whether Cameron Mutual and Cameron National are "alter ego" corporations, it is fair to say that any line between the two was not apparent to third parties like FNE Financial, and that Cameron Mutual and Cameron National operated under the same trade name at times relevant to this litigation, without distinguishing one entity from the other. Cameron's contacts with the state of Nebraska have been such that maintenance of a suit against it in this forum does not offend traditional notions of fair play and substantial justice, and Cameron reasonably should have anticipated being "haled into court" here.

### _Venue_

Because the Court concludes that it has personal jurisdiction over Cameron, venue is proper in this district pursuant to 28 U.S.C. § 1391. Venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State . . . " 28 U.S.C. § 1391(a)(1), and a corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Venue is also proper in this district, because a substantial part of the events giving rise to the claim occurred in this district. 28 U.S.C. § 1391(a)(2).

---

[4] The Court estimates highway mileage from Cameron's headquarters in Cameron, Missouri, to the Nebraska border to be 66 miles, and from the town of Cameron to Omaha to be 164 miles. The Court recognizes that potential witnesses may reside in Nebraska and Missouri, as well as Arkansas.

***Claim upon which Relief Can Be Granted***

Cameron contends that FNE Financing "has alleged patently false facts" and that the Complaint should be dismissed.  (Defendant's Brief, Filing No. 9 at 9.)  The Court will not convert Cameron's Motion to Dismiss into a motion for summary judgment, however, because the discovery conducted to date has been limited to jurisdictional issues, pursuant to the Court's Order of December 6, 2010.  (Filing No. 15.)  While Cameron contends that it never issued any policy naming FNE Financial as an additional insured, FNE Financial has produced some evidence to the contrary, and further discovery may reveal more evidence relevant to FNE Financial's claim.

The Court will act on the assumption that all the allegations in the Complaint are true.  Because the Complaint contains factual allegations sufficient to raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of FNE Financing's claim, FNE Financing's claim is "plausible," and the Motion to Dismiss for failure to state a claim upon which relief can be granted will be denied.  Accordingly,

IT IS ORDERED:

1.    Defendant Cameron Insurance Companies' Amended Motion to Dismiss (Filing No. 11) is denied;

2.    Defendant Cameron Insurance Companies' Motion to Dismiss (Filing No. 8) is denied as moot; and

3.    Defendant Cameron Insurance Companies will respond to Plaintiff's Complaint on or before February 18, 2011.

DATED this 3rd day of February, 2011.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge